J-A18016-22

2022 PA Super 180

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A., AN ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A. AND JONES, GREGG, CREEHAN & GERACE, LLP | : : : : : : | |
| | : | No. 1003 WDA 2021 |

Appeal from the Order of December 10, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at 022104306

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY MURRAY, J.: **FILED: OCTOBER 17, 2022**

In this appeal, Attorney Thomas J. Dempsey, Jr. (Attorney Dempsey), appeals the order striking his appearance on behalf of M.A., an alleged incapacitated person (AIP).[1] Upon review, we vacate and remand for further proceedings.

## Case History

Although the issues before this Court are narrow, a comprehensive recitation of the proceedings is relevant to our disposition. On June 1, 2021, one of M.A.'s four adult daughters, Marsha Asbearry (Marsha), filed an

---

[1] Orders precluding counsel in civil cases are interlocutory and not immediately appealable. **E.R. v. J.N.B.**, 129 A.3d 521, 525 (Pa. Super. 2015). However, once a final order has been entered, the precluded attorney may bring a separate appeal challenging disqualification. **Id.** As the orphans' court entered a final order during the pendency of this appeal, in the interest of judicial economy, we "regard as done what ought to have been done," and consider the appeal as being from the December 10, 2021, order. **See Zitney v. Appalachian Timber Products, Inc.**, 72 A.3d 281, 285 (Pa. Super. 2013).

"Emergency Petition for Appointment of Permanent Plenary Guardian of Person and Estate and Injunctive Relief," seeking appointment as M.A.'s guardian. Petition, 6/1/21, at 1 (unnumbered).[2] Marsha averred that M.A.'s wife (Marsha's mother), Vondella, died on April 4, 2021, and M.A., who was 89 years old, suffers from dementia. *Id.* at 1-2 (unnumbered). Marsha claimed there was an ongoing dispute between her and her siblings regarding M.A.'s finances. *Id.* at 2-3 (unnumbered). She alleged:

> [Marsha] seeks guardianship, in part, to maintain continuity of the Living Will, [POA], Last Will and Testament, and clear wishes of both Vondella [ ] and [M.A.].
>
> [Marsha] has been familiar with the legal, medical and private affairs of [M.A.] for many years, through the present with primary support previously provided by Vondella [ ].
>
> [Marsha] seeks to establish successor permanent guardianship over [M.A.'s] person, and permanent plenary guardianship over the Estate of [M.A.].

*Id.* at 3 (unnumbered). In addition to being named guardian, Marsha sought "immediate injunctive relief via an Order of Court freezing the assets of [M.A.] pending further Order of Court and resolution of these proceedings." *Id.* at 4 (unnumbered).

Marsha attached to the petition copies of both parents' 2019 wills, which, in the event of their death, named Marsha as sole heir and executor. *Id.* at Exhibits A and B. She also included a 2019 power of attorney (POA)

---

[2] Marsha's sisters are Adraine Moreland (Adraine), Virginia Smiley (Virginia), and Audrey Patrick (Audrey). Audrey is not involved in the proceedings.

appointing her as M.A.'s agent in the event of Vondella's unavailability. *Id.* at Exhibit C. Accompanying the petition was the sworn affidavit of Michele J. Gaines, the paralegal who assisted in preparing the wills and POA. Ms. Gaines stated in her affidavit that at the time of Vondella's death, M.A. suffered from dementia and was unable to locate his and Vondella's wills, so Ms. Gaines provided copies. *Id.* at Exhibit D. Lastly, Marsha appended a letter from John T. Haretos, M.D., who stated he had been M.A.'s primary physician for 20 years, and

> [M.A.] has had a decline in his mental faculties over the last five years. He is now diagnosed with Dementia. He no longer can live independently and he cannot handle his own financial affairs. This is a permanent situation and will not improve.

*Id.* at Exhibit E.

On June 2, 2021, the orphans' court issued an emergency order freezing M.A.'s assets (the order was not entered on the orphans' court docket). On June 4, 2021, the orphans' court appointed Nicola Henry-Taylor, Esquire (Attorney Henry-Taylor), to represent M.A.[3] On June 9, 2021, attorneys Carol Sikov Gross and Lori Capone (Attorney Capone), from the law firm of Sikov and Love, entered their appearances on behalf of Adraine, Virginia, and M.A.

_____

[3] Having been elected in November 2021, to the Allegheny County Court of Common Pleas, Attorney Henry-Taylor is now The Honorable Henry-Taylor. Following her election, Judge Henry-Taylor moved to withdraw her appearance. On December 29, 2021, the orphans' court granted her request and appointed Jennifer Price, Esquire, as counsel for M.A.

The orphans' court issued a preliminary order scheduling a hearing for July 8, 2021. On June 10, 2021, the orphans' court issued another order scheduling a status conference for June 22, 2021.

On June 22, 2021, Attorney Capone filed a petition to withdraw from her representation of M.A. (the orphans' court never ruled on the petition). Attorney Capone sought to withdraw based on the orphans' court's appointment of Attorney Henry-Taylor to represent M.A. Petition to Withdraw Appearance, 6/22/21. That same day, Attorney Capone filed on behalf of Adraine and Virginia a motion to unfreeze M.A.'s assets. Motion for Emergency Order to Unfreeze Assets, 6/22/21. The Motion included a POA executed by M.A. on April 12, 2021 (four days after Vondella's death), naming Adraine and Virginia as agents. *Id.*, Exhibit B. In their motion, Adraine and Virginia disputed Marsha's allegations that (a) they had engaged in financial misconduct; and (b) Marsha had been primarily responsible for assisting her parents with financial and personal affairs. *Id.* 3 (unnumbered). They asserted:

> During the last few years of her life, Vondella's daughter, Adraine [], assisted her mother and father with their financial matters, such as paying bills, verifying that essential bills were paid, and making deposits on their behalf.
>
> * * *
>
> On April 12, 2021, [M.A.] executed a Durable Financial [POA] appointing his daughters [Adraine and Virginia], as his agents[]. …

- 4 -

At all times since the execution of the 2021 POA, [Adraine and Virginia] have properly managed their father's finances and personal affairs.

*Id.* at 2-3 (unnumbered). The sisters further averred:

[O]n numerous occasions and over many years, their father, [M.A.], stated his desire to have [Adraine and Virginia] manage his financial affairs.

[O]n numerous occasions and over many years, their father, [M.A.,] stated his desire and intention never to have [Marsha] manage his financial affairs.

*Id.* at 4 (unnumbered) (paragraph numbers omitted).

Moreover, their motion alleged M.A.

is without funds to buy food, pay for any utilities, and necessities, or even pay for his wife's gravestone that had been previously ordered.

\* \* \*

In order to afford even the necessities of life, [M.A.] has been forced to borrow money from three of his daughters, [Adraine] [Virginia], and [Audrey].

During the time since she obtained a Court Order to freeze the accounts, [Marsha] has provided no financial support to [M.A.].

*Id.* at 3-4 (paragraph numbers omitted).

Thereafter,

[t]he June 22, 2022, status conference was attended by three (3) lawyers, various family members and, most importantly, [M.A.]. The focus of this conference was [M.A.] centric. The [orphans' c]ourt's "goal" was "to create some framework for [M.A.] to be taken care of, for his bills, for his welfare to be secure" and **leave the meaty issue of incapacity for the upcoming hearing.** After some back-and-forth with counsel, it was learned that [M.A.'s] daughter, [Adraine], who he was living with at the time, would take care of her father. The [orphans' c]ourt concluded that

- 5 -

> this was not "an emergency" or a "Crisis" situation. The [orphan's c]ourt then adjourned the [conference] with a reminder to all present that we will "meet on July 8th as Scheduled and we'll proceed from there."

Orphans' Court Opinion, 2/7/22, at 22 (emphasis added, citations omitted).

Attorney Henry-Taylor formally entered her appearance on behalf of M.A. on June 25, 2021. Four days later, on June 29, 2021, Attorney Dempsey entered his appearance on behalf of M.A.

On July 12, 2021, Marsha filed a motion to strike Attorney Dempsey's appearance. On July 14, 2021, Attorney Henry-Taylor filed a motion to strike Attorney Dempsey's appearance. Both motions relied on correspondence in which Attorney Dempsey acknowledged Attorney Henry-Taylor's appointment as counsel for M.A. and stated that he "look[ed] forward to working with Attorney Henry-Taylor as co-counsel[.]" Letter from Attorney Dempsey, 6/29/21, at 2 (unnumbered). Neither Marsha nor Attorney Henry-Taylor requested an evidentiary hearing on their motions. On July 14, 2021, the orphans' court continued the guardianship hearing to July 26, 2021.

Adraine and Virginia filed an answer and new matter to Marsha's guardianship petition on July 23, 2021. The sisters contested the validity of the 2019 will, and alleged Marsha had a

> history of criminal behavior, drug dependency, and other inappropriate behavior, [such that Vondella and M.A.] never intended to place [Marsha] in any position from which she could access their assets and income or exercise any control over their finances.

- 6 -

Answer and New Matter of Adraine and Virginia, 7/23/21, at 1-2. Adraine and Virginia maintained that guardianship was unnecessary, as the recently executed durable financial POA and durable health care POA naming them as M.A.'s agents was a less restrictive alternative obviating the need for a guardianship. *Id.* at 5-6. However, in the event the orphans' court found M.A. to be incapacitated, Adraine and Virginia asserted they should be named co-guardians of M.A.'s person and estate. *Id.* at 5-6.

On July 23, 2021, Attorney Dempsey filed an answer and new matter in response to the guardianship petition. Answer and New Matter of M.A., 7/23/21. In his answer and new matter, to which he attached an unsworn verification purportedly signed by M.A., Attorney Dempsey asserted: "M.A. has at all times acted of his own volition to engage counsel for the purpose of determining and acting to preserve all of his legal rights free of any undue influence by any of his family members." Answer and New Matter of M.A., 7/23/21, at 3 (unnumbered). Attorney Dempsey also averred:

> [Attorney Henry-Taylor] has not consulted with [M.A.] for a sufficient amount of time, she has not given him the opportunity to fully express his desire to advance a less-restrictive alternative to guardianship that will adequately promote and preserve his autonomy and independence, and she has not advocated on his behalf for the least restrictive alternative to the guardianship sought by [Marsha].

*Id.* at 7.

Attorney Dempsey additionally filed "A Demand for Testimony Pursuant to Pa.O.C.R. 14.3(c)(1).[4] Attorney Dempsey sought a witness and exhibit list

_____

[4] Although the demand for testimony purports to be pursuant to Rule "41.3(c)(1)," this appears to be a typographical error. Rule 14.3(c) provides, in relevant part:

> **(a)** A petitioner may seek to offer into evidence an expert report for the determination of incapacity in lieu of testimony, in-person or by deposition, of an expert using the form provided in the Appendix to these rules. In an emergency guardianship proceeding, an expert report may be offered into evidence if specifically authorized by the court.
>
> **(b) Notice.**
>
> (1) If a petitioner seeks to offer an expert report permitted under paragraph (a), the petitioner shall serve a copy of the completed report upon the alleged incapacitated person's counsel and all other counsel of record pursuant to Rule 4.3 or, if unrepresented, upon the alleged incapacitated person, pursuant to Pa.R.C.R. No. 402(a) by a competent adult no later than ten days prior to the hearing on the petition.
>
> (2) If a petitioner seeks to offer an expert report, as permitted under paragraph (a), the petitioner shall serve pursuant to Rule 4.3 a notice of that fact upon those entitled to notice of the petition and hearing no later than ten days prior to the hearing on the petition.
>
> (3) The petitioner shall file a certificate of service with the court as to paragraphs (b)(1) and (b)(2).
>
> **(c) Demand.**
>
> (1) Within five days of service of the completed report provided in paragraph (b)(1), the alleged incapacitated person's counsel or, if unrepresented, the alleged incapacitated person, may file with the court and serve upon the petitioner pursuant to Rule 4.3 a demand for the testimony of the expert.

*(Footnote Continued Next Page)*

from Marsha and requested she provide either live expert testimony or the deposition of M.A.'s treating physician. Demand for Testimony, 7/23/21, at 1-2 (unnumbered).

Lastly, Attorney Dempsey filed nearly identical responses to the motions to strike his appearance. He did not attach a copy of his fee agreement with M.A. or signed verification from M.A. The responses provided minimal information about the circumstances under which M.A. retained Attorney Dempsey. *See* Reply to Motion to Strike Appearance, 7/23/21, at 1-6 (unnumbered). The responses did not request an evidentiary hearing. Notwithstanding, Attorney Dempsey requested the orphans' court "deny the motion to strike appearance[.]" *Id.* at 6 (unnumbered). Attorney Dempsey did not file a motion to strike Attorney Henry-Taylor's appearance.

On July 26, 2021, the orphans' court issued a ruling from the bench on the "two requests to strike appearance of a lawyer who claims to represent the incapacitated person." N.T., 7/26/21, at 3-4. Attorney Paul Ellis appeared on behalf of Marsha; both Attorney Henry-Taylor and Attorney Dempsey appeared on behalf of M.A. Attorney Capone, who had filed the outstanding petition to withdraw from representation of M.A., did not appear.

---

Pa.O.C.R. 14.3(a), (b) and (c)(1).

The orphans' court noted the parties had raised this Court's decision in

**Estate of Rosengarten**, 871 A.2d 1249 (Pa. Super. 2005). N.T., 7/26/21,

at 4. The orphans' court distinguished **Rosengarten**, stating:

I read it. I see a big distinction without [*sic*] facts, and as such, the rules springing from **Rosengarten** will not apply here. In **Rosengarten** there were facts of much improved mental condition of Ms. Rosengarten. She was now taking her medicine. That should have prompted the trial court to review its previous incapacity decision. We do not have facts close to that.

So here's my ruling. [Attorney] Dempsey, your appearance is hereby stricken. You are not co-counsel for [M.A.].

**Id.** Attorney Dempsey took exception. Attorney Dempsey did not aver M.A.

was being denied the right to counsel of his choice, but argued the orphans'

court "right now doesn't even have jurisdiction over my client because he

hasn't been served pursuant to 5511 of the Guardianship Act." **Id.** at 5.

Immediately following its decision striking Attorney Dempsey's

appearance, the orphans' court proceeded to a hearing on M.A.'s alleged

incapacity. Attorney Henry-Taylor represented M.A.; Attorney Ellis

represented Marsha; and Attorney Capone represented Adraine and Virginia.

M.A. was present, despite Attorney Dempsey's claim regarding lack of service.

The orphans' court did not take any sworn testimony.[5] Instead, the court

explained its "understanding" of the matter and inquired about the feud

between M.A.'s daughters. N.T., 7/26/21, at 3, 9-10. The court stated, "I

---

[5] The transcript is in the certified record, but the exhibits admitted into evidence are not.

have some background, to sort of, what I thought this would be about. It's about who's going to get the money. [M.A.] can have all these other issues but ultimately this is about who's going to get dad's money and what proportion." *Id.* at 14. The court continued:

Why are we here? … I have a lot of cases but I don't get children feuding over the parent. I mean, this is a modest estate. There's something else here other than the traditional issues that I see that belie this type of proceeding. Maybe what would help me is, what's the feud about? Why isn't there any - - why isn't there any family congruence or harmony about giving dad the best life he can have for the balance of the life he has? … I believe the requisite issues with respect to [M.A.] and an AIP proceeding would probably move forward, but who should be the guardian. How come there can't be some agreement? That's the part I don't understand. So we can go forward with the emergency issue and the AIP but I'm really - - I'm confused, what is it about. Where did you all go awry? What happened? I received letters from the husband of one party and it's almost like a poison pen – I mean, I do estates for multi hundreds of millions of dollars and it doesn't have the same sort of noxious poison that this modest estate has.

*Id.* at 9-10. As to the competing wills, the court opined:

I understand the sisters' position that, why should [the third sister, Marsha] get everything. I don't know whether that was his intent, the father to give everything to one daughter when there's three who get nothing, I don't know. But if I was one of the three who didn't get nothing, I would probably be here in court. … I believe if I had a sibling who somehow produced a document that said that if mom dies before dad, then I get everything and it didn't make sense, given the relationships that the other kids had with dad, I would probably come here and see if this will is legitimate.

*Id.* at 18-19; *see also id.* at 25-27 (orphans' court noting that should the wills be invalidated, an intestate estate would be divided evenly between heirs); *id.* at 30-31 ("Why do you all need a will? … The real issue is the will.

… If I were to make a decision whether to have no will or have a will that divides things equally, I would go with the will that divides things equally[.]…"). The orphans' court discounted the issue of whether M.A. had the capacity to enter into a POA or will on April 12, 2021, as "just smoke." *Id.* at 24.

At the urging of the court, the parties arrived at a settlement. *Id.* at 21-22. They agreed to M.A. being declared incapacitated, and Marsha, Adraine, and Virginia serving as co-guardians of M.A.'s person and estate, with a corresponding order to be drafted by Attorney Henry-Taylor. *Id.* at 39-41.

M.A. was present throughout the proceedings and did not object to the striking of Attorney Dempsey as counsel, his representation by Attorney Henry-Taylor, or the agreement regarding his incapacity and guardianship. Attorney Henry-Taylor advised the court that M.A. wished to settle and wanted "everyone [to] get along and share everything … [and] would like to see the fighting stop." N.T., 7/26/21, at 23. M.A. confirmed to the court: "Everything's good." *Id.* at 29. *See also id.* at 39-41 (orphans' court announcing parties' agreement and stating Attorney Henry-Taylor would memorialize the agreement); *id.* at 43-45 (Attorney Henry-Taylor affirming she personally served M.A. and explained the proceedings to him; she also noted M.A. was in the courtroom for all proceedings and participated to the extent possible). While Attorney Capone argued lack of proper service upon M.A., and thus the orphans' court's lack of personal jurisdiction, she stated,

"the fact that we were working something out, I would like this matter to move forward." *Id.* at 42; *see id.* at 41-42.

On August 3, 2021, the orphans' court issued an order denying Attorney Dempsey's demand for testimony as moot. On August 13, 2021, Attorney Henry-Taylor filed a petition for compensation. Marsha filed a response to Adraine and Virginia's answer and new matter on August 17, 2021. Marsha filed a guardianship bond on August 24, 2021. On September 2, 2021, Adraine and Virginia filed a guardianship bond.

**On August 26, 2021, prior to entry of a final order, Attorney Dempsey filed this appeal from the order striking his appearance.** Attorney Dempsey and the orphans' court complied with Pa.R.A.P. 1925. In the meantime, proceedings involving M.A. continued in orphans' court.

On October 26, 2021, Adraine and Virginia filed a motion to amend (the not yet memorialized) consent agreement and sought the appointment of an independent entity to serve as guardian of M.A.'s estate. Motion to Amend, 10/26/21, at 3-5. That same day, Adraine and Virginia filed a motion to unfreeze M.A.'s assets and dissolve the injunction. Motion to Unfreeze Assets, 10/26/21, at 3-5. Marsha filed a reply to both motions on November 1, 2021.

A guardianship review hearing took place on November 1, 2021, at which all parties (including M.A.) appeared, represented by counsel. Counsel indicated that because Marsha, Adraine, and Virginia were in conflict as co-

guardians of the estate, the three sisters agreed to the court appointing a third party as guardian of M.A.'s estate.

M.A. spoke at the hearing. He did not object to his representation by Attorney Henry-Taylor or request representation by Attorney Dempsey. N.T., 11/1/21, at 40-41. M.A. described his current living situation: "Well, what I do is live the regular way, like I always did." *Id.* at 40. He referenced the conflict between his daughters stating, "This one do this and this one do that, but I don't live like that." *Id.* He expressed his desire that they work together, "if you want to make good of it[.]" *Id.* at 41.

On December 10, 2021, all parties filed consents to serve as guardians of M.A. That same day, the orphans' court filed its final order memorializing the parties' agreement (a) declaring M.A. to be incapacitated; (b) appointing Marsha, Adraine and Virginia as co-guardians of his person; and (c) appointing Ameriserv Trust and Financial Service Company as permanent plenary guardian of his estate. Order, 12/10/21, at 2.

On December 17, 2021, Adraine filed a request for $1,500.00 per month, retroactive to June 22, 2021, to defray M.A.'s living expenses. Petition for Compensation, 12/17/21, at 1-3 (unnumbered). Marsha filed a response objecting to the request, noting the orphans' court had stricken from its final order a paragraph allotting funds to Adraine. Response, 12/20/21, at 1-4 (unnumbered). Adraine filed a reply on January 6, 2022. The orphans' court granted Adraine's request by order entered January 20, 2022.

**Issues**

Attorney Dempsey challenges the order striking him as M.A.'s counsel.

He presents two issues for review:

> I. Did the Orphans' Court abuse its discretion and err as a matter of law in denying an alleged incapacitated person the right to counsel of his own choosing?
>
> II. Did the Orphans' Court err as a matter of law in *sua sponte* voiding a fee agreement between a client and his privately retained counsel without due process[?]

Attorney Dempsey's Brief at 4.[6]

**Discussion**

We begin with our standard of review:

> [T]his Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted).

When appropriate, the orphans' court shall appoint counsel to represent the alleged incapacitated person in any matter for which counsel has not been retained by or on behalf of that individual. 20 Pa.C.S.A. § 5511(a). The

---

[6] Marsha did not file a brief, and Adraine and Virginia, by correspondence dated April 28, 2022, indicated they take no position in this appeal.

orphans' court should abide by an incapacitated person's wishes regarding representation "to the extent possible." ***Rosengarten***, 871 A.2d at 1257.

In considering Attorney Dempsey's issues, we recognize that the role of counsel in guardianship proceedings is not clearly defined in the guardianship statute. ***See*** 20 Pa.C.S.A. § 5511(a) (providing for court appointed counsel of the alleged incapacitated person if the orphans' court so chooses); ***see also Estate of Haertsch***, 609 A.2d 1384, 1387 (Pa. Super. 1992) (declining to reach issue of whether alleged incapacitated person has constitutional right to counsel).[7] However, the following provisions of the Probate, Estates, and Fiduciaries Code (PEF Code) provide guidance. Section 5501 of the PEF Code defines an incapacitated person as:

> [A]n adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S.A. § 5501. Section 5502 provides:

> Recognizing that every individual has unique needs and differing abilities, **it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them,** which assists

---

[7] Since 2014, the Pennsylvania Supreme Court's Elder Law Task Force has recommended changes to both the Rules of Professional Conduct and the Orphans' Court Rules, to address and clarify the role of counsel in guardianship matters. ***See*** Report and Recommendations of the Elder Law Task Force, 11/2014, Guardian and Counsel Committee Report, § VIII.B.1.a.-b., at 50; § VIII.C.1.D. at 51; § VIII.1.a., at 51; § VIII.C.1.c. at 51.; ***see also In re Sabatino***, 2016 WL 6995384, at *11 n.17 (Pa. Super. Nov. 30, 2016).

these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and **which accomplishes these objectives through the use of the least restrictive alternative**; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S.A. § 5502 (emphasis added). The PEF Code defines the powers, duties and liabilities of a guardian, and requires that the "[e]xpressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent." 20 Pa.C.S.A. § 5521(a). Accordingly, counsel appointed to represent an alleged incapacitated person must present the alleged incapacitated person's own position to the court. ***See generally***, 20 Pa.C.S.A. § 5502. However, counsel must also consider the interests of the alleged incapacitated person under 20 Pa.C.S.A. § 5501 (defining incapacitated person).

Counsel's ethical obligations are set forth in the Pennsylvania Rules of Professional Conduct. Rule 1.14, which addresses representation of a person with diminished capacity, states:

a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals

- 17 -

or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian *ad litem*, conservator or guardian.

c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

Pa.R.C.R. 1.14.

The Pennsylvania Orphans' Court Rules have additional requirements:

**(a) Retention of Counsel.** If counsel for the alleged incapacitated person has not been retained, the petitioner shall notify the court in writing at least seven days prior to the adjudicatory hearing that the alleged incapacitated person is unrepresented and also indicate whether the alleged incapacitated person has requested counsel.

**(b) Private Counsel.** If the alleged incapacitated person has retained private counsel, **counsel shall prepare a comprehensive engagement letter for the alleged incapacitated person to sign**, setting forth when and how counsel was retained, the scope of counsel's services, whether those services include pursuing any appeal, if necessary, how counsel will bill for legal services and costs and the hourly rate, if applicable, who will be the party considered responsible for payment, whether any retainer is required, and if so, the amount of the retainer. **Counsel shall provide a copy of the signed engagement letter to the court upon request.**

**(c) Appointed Counsel.** The court may appoint counsel if deemed appropriate in the particular case. **Any such order appointing counsel shall delineate the scope of counsel's services and whether those services include pursuing any appeal, if necessary.**

Pa.O.C.R. 14.4 (emphasis added).

Incapacity must be proven by clear and convincing evidence. ***See In re Hyman***, 811 A.2d 605, 608 (Pa. Super. 2002); ***see also*** 20 Pa.C.S.A. § 5511(a). Clear and convincing evidence "is the highest burden in our civil law and requires that the fact-finder be able to come to the clear conviction, without hesitancy, of the truth of the precise fact in issue." ***In re estate of Heske***. 647 A.2d 243, 244 (Pa. Super. 1994) (internal citations and quotations omitted). **The court may appoint a plenary guardian only upon finding the AIP is totally incapacitated and in need of such services.** 20 Pa.C.S.A. § 5512.1(c).

Mindful of the above authority, we consider Attorney Dempsey's argument that the orphans' court "abused its discretion and erred as a matter of law by depriving [M.A.] of the right to choose his own counsel." Attorney Dempsey's Brief at 15; ***see id.*** at 15-20. Attorney Dempsey relies on this Court's decision in ***Rosengarten***.

In ***Rosengarten***, the AIP, Ms. Rosengarten, suffered from bipolar disorder and had stopped taking her medication. ***Rosengarten***, 871 A.2d at 1251. The orphans' court appointed counsel and ultimately found Ms. Rosengarten to be incompetent. ***Id.*** The court appointed a guardian of the estate and person, who filed a petition seeking to sell Ms. Rosengarten's residence. ***Id.*** Ms. Rosengarten hired her own attorney, who filed an answer and new matter objecting to the sale, seeking removal of the guardian, and asking that her father be appointed guardian of the estate. ***Id.*** The answer

and new matter also raised specific allegations of financial misconduct by the current guardian and maintained that Ms. Rosengarten's mental health had improved as a result of her taking medication, and thus a review hearing was warranted to the issue of her continued incapacity. *Id.* The orphans' court did not hold the requested hearing; instead, it held a hearing on the guardian's petition to sell the home, which it granted. *Id.* at 1252. The court did not allow Ms. Rosengarten's chosen counsel to participate. *Id.*

On appeal, this Court reversed and remanded. *Id.* at 1250. We first concluded the trial court erred in failing to conduct the requested review, particularly where there were allegations regarding the guardian's misconduct. *Id.* at 1254. We held the failure to conduct a review hearing violated 20 Pa.C.S.A. § 5512.2(a), which requires a hearing when the incapacitated person or other "interested person" alleges "a significant change in the person's capacity." 20 Pa.C.S.A. § 5512.2(a); *id.* We recognized that the failure to hold a review hearing ignored the incapacitated person's "stated preference," in violation of 20 Pa.C.S.A. § 5502. *Id.* We opined:

> The dangers of the incompetency statute have been recognized since its inception. *In re Bryden's Estate*, 211 Pa. 633, 633, 61 A. 250, 250 (1905) (statute allowing for declaration of incompetency "is a dangerous statute" and is "to be administered by the courts with the utmost caution and conservatism."). **It is basic to our jurisprudence that a person's property is theirs to dispose of as they wish, even if it results in poverty.** *Id.* As the Court stated in *Bryden*, "[T]he basic principle involved, as laid down in *Lines v. Lines*, 142 Pa. 149, 21 A. 809, [is] that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family if he chooses to commit such an act of folly." *Id.* Recently, in *In re Hyman*, 811

- 20 -

A.2d 605, 608 (Pa.Super.2002) (quoting *Estate of Haertsch*, 415 Pa.Super. 598, 609 A.2d 1384, 1386 (1992)), we noted that the incompetency statute "places a great power in the court. The court has the power to place total control of a person's affairs in the hands of another. **This great power creates the opportunity for great abuse.**" The above cited and other provisions of Chapter 55 are tailored to ensure that the incapacitated person's wishes are honored to the maximum extent possible. In this case, the guardian and the orphans' court violated this mandate at nearly every conceivable opportunity.

**Chapter 55 must be interpreted and the courts' actions guided by a scrupulous adherence to the principles of protecting the incapacitated person by the least restrictive means possible.** This concept is embodied in our Supreme Court's decision in *In re Peery*, 556 Pa. 125, 727 A.2d 539 (1999). In that case, the alleged incapacitated person was mentally impaired, but the orphans' court concluded that a guardianship was not warranted because the person had a support system in place that met her financial and physical needs and which she preferred over a guardianship. The Supreme Court lauded the orphans' court's implementation of the incapacitated person's desire to continue with the existing support system and quoted with approval the orphans' court's statement that it would abide by the incapacitated person's wishes as long as they were rational and did not result in harm to her.

*Id.* at 1254-55 (emphasis added).

Regarding Ms. Rosengarten's right to counsel of her choosing, we

observed:

First, we are not presently considering the validity of any contract entered by Ms. Rosengarten and [chosen counsel], and in fact, there is no evidence that one was made. Second, a contract entered into by an incapacitated person is merely presumed to be voidable, and this presumption is subject to rebuttal by proof that the person was not incapacitated, *see Fulkroad v. Ofak*, 317 Pa.Super. 200, 463 A.2d 1155 (1983), which was an allegation raised in this matter. **Finally, this position begs the central question, which is whether Ms. Rosengarten should have the right to appointed counsel of her choosing. As the above-cited case law and statutory language make**

**abundantly clear, Ms. Rosengarten's stated wishes are to be honored to the extent possible.** In the absence of some indication that [chosen counsel's] representation would be harmful to Ms. Rosengarten, once Ms. Rosengarten indicated that she wanted him to represent her, [chosen counsel] should have been permitted to represent her voice.

The appointment of [chosen counsel] would have been particularly appropriate herein as appointed counsel … admitted at oral argument that she made no inquiry into and took no action on the allegation that Ms. Rosengarten no longer was incapacitated. In addition, at the hearing regarding the sale of the house, [appointed counsel] did not raise a single objection to [the guardian's] fees and failed to articulate Ms. Rosengarten's desires in this matter, including her wish that her father act as guardian to reduce costs.

*Id.* at 1257 (emphasis added).

In the 17 years since it was issued, there has been a dearth of published case law interpreting **Rosengarten**. Similarly, there are few unpublished cases, and those cases only discuss **Rosengarten** briefly.

In **Estate of Crowder**, 262 A.3d 549 (Pa. Super. 2021) (unpublished memorandum),[8] the orphans' court dismissed the AIP's petition to nullify a health care POA, based on a finding that the AIP lacked standing, and the issue was rendered moot by the appointment of a guardian. **Crowder**, 262 A.3d at *1-2. This Court, after determining the orphans' court erred in deeming the POA moot, held that under **Rosengarten**, the AIP had standing to pursue nullification of the POA. *Id.* at *2-3. We noted the AIP's statement

_____

[8] Pa.R.A.P. 126(b) provides that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for persuasive value.

at the guardianship hearing that he did not want the person holding the POA to make healthcare decisions for him, and we concluded the AIP had "a substantial, direct, and immediate interest" in the outcome of his petition to nullify the POA. *Id.* at *3. We also acknowledged the AIP's capacity to make this decision because the orphans' court had found him incapable of making financial decisions but had not appointed a guardian of his person. *Id.*

In *Sabatino*, a dispute arose between court-appointed counsel for the AIP and counsel for his service providers, who purported to be the AIP's counsel of choice. *Sabatino*, 2016 WL 6995384, at *1, 159 A.3d 602 (Pa. Super. 2016) (unpublished memorandum). The orphans' court distinguished *Rosengarten* based on the AIP's tendency to say what he thought the last person speaking wanted to hear, thus raising doubts about the AIP's capacity to choose counsel. *Id.* at *3, *6-8. However, the court permitted the service providers and their counsel to fully participate in proceedings as *amicus curiae*. *Id.* On appeal, this Court concluded we need not reach the service providers' argument that the orphans' court decision violated *Rosengarten*, given that the providers were permitted to participate in the proceedings. *Id.* at *9. We further rejected their argument that the allegedly erroneous disqualification of counsel of the AIP's choice in a guardianship proceeding constituted structural error. *Id.*

In *In Re Kline*, 2016 WL 102755 (Pa. Super. Jan. 8, 2016), the great-niece of the AIP appealed the order dismissing her as guardian of the person

and estate, appointing a third party as guardian, and assessing a surcharge for waste and mismanagement. **Kline**, 2016 102755, at *1. In affirming the orphans' court, this Court rejected the former guardian's reliance on **Rosengarten**, finding it was distinguishable where "no issue has been raised regarding [the AIP's] continued incapacity or ability to return home." **Id.** at *7 n.13.

Lastly, in **Estate of Wittmaier**, this Court adopted the orphans' court's finding that **Rosengarten** did not apply, where the orphans' court had refused to allow the AIP to change from originally retained counsel to different retained counsel. **Wittmaier**, 131 A.3d 81, 2015 WL 7012971 (Pa. Super. 2015) (unpublished memorandum), at *1-2. Citing **Rosengarten**, the orphans' court recognized it, "should abide by the incapacitated person's wishes so long as they are rational and do not result in harm to the incapacitated person." **Id.** at *8. The orphans' court observed the AIP had not alleged misconduct by original counsel. **Id.** at *7. Rather, the AIP "will always be upset at anybody who disagrees with what his interests or desires are." **Id.** (citation omitted). The orphans' court found, based on hearing testimony, that the AIP would oppose any counsel who disagreed with him, even if counsel were acting in the AIP's best interests. **Id.** at *8. The court also expressed concern regarding errors in new counsel's filings, and new counsel's lack of preparation and understanding of the seriousness of the AIP's medical condition. **Id.**

As the above cases demonstrate, the issue of the AIP's right to counsel in guardianship proceedings is imprecise. The PEF Code mandates that orphans' courts honor, to the extent possible, the wishes of the AIP. **See** 20 Pa.C.S.A. §§ 5502 and 5521(a). Thus, the orphans' court must balance the competing interests in the wishes of the AIP, the resources available, and the best interests of the AIP. **See Rosengarten**, **supra** at 1255-57.

The facts of this case are different from **Rosengarten**. M.A. is elderly, and this is not a case where his functioning was impaired by failure to take medication and had he "started to take [his] medication properly, it would follow that a review hearing would be in order." **Id.** at 1255. This is also not a case where M.A. wrote a "cogent and practical" letter to the orphans' court expressing his preferences, including a preference for counsel of his choice. **Id.** at 1252. Despite the factual distinctions, we are unable to determine whether **Rosengarten** applies given the deficiencies in the record.

As recounted above, many of the filings failed to conform with Orphans' Court Rules. Marsha's petition does not comply with Pa.O.C.R. 14.2 (detailing, *inter alia*, petition content and exhibits). For example, Marsha did not include a Pennsylvania State Police Criminal Records Check as required by Pa.O.C.R. 14.2(c)(2). In another instance, the orphans' court's order appointing Attorney Henry-Taylor as counsel does not comply with Pa.O.C.R. 14.4(c), as it does not detail the scope of her representation. While both Attorney Capone and Attorney Dempsey challenged the orphans' court's jurisdiction based on

- 25 -

improper service, neither filed preliminary objections as provided in Pa.O.C.R. 3.6(c) and 3.9(b)(1).

In 2020, the Administrative Office of Pennsylvania Courts and The Advisory Council on Elder Justice in the Courts authored and distributed to the orphans' courts a Guardianship Bench Book. The authors stated:

> In balancing an AIP's need for protection with respect for their autonomy, **judges are required by the United States Constitution's guarantee of Due Process to protect the rights of the AIP to the greatest extent possible.** Appointment of a guardian, with the resulting loss of rights for the AIP, may not be necessary in situations where other resources are available to assist the AIP. Even where the evidence clearly demonstrates an incapacity, **judges are required to consider whether there is a less restrictive alternative to guardianship that can meet the person's needs.** Judges are required under Pennsylvania law to favor limited guardianships over plenary guardianships in appropriate cases. Where possible, limited guardianship orders should be framed to address the specific areas in which the court determines, based on the testimony and evidence, that an individual lacks the capacity to meet the essential requirements for their well-being and is in need of guardianship services.

The Advisory Council on Elder Justice in the Courts and The Administrative Office of Pennsylvania Courts, Guardianship Bench Book, 5 (2020) (emphasis added).

> The PEF Code mandates, prior to an AIP being declared incapacitated, a petitioner must prove incapacity by clear and convincing evidence. To establish incapacity, the petitioner **must present testimony**, in person or by deposition from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills. The petition **must also present evidence** regarding the services being utilized to

meet essential requirements for the alleged incapacitated person's physical health and safety, to manage the person's financial resources or to develop or regain the person's abilities; evidence regarding the types of assistance required by the person and **as to why no less restrictive alternatives would be appropriate; and evidence regarding the probability that the extent of the person's incapacities may significantly lessen or change.**

20 Pa.C.S.A. § 5518 (emphasis added). The orphans' court must "consider and make specific findings of fact concerning"

> (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
>
> (2) The extent of the individual's capacity to make and communicate decisions.
>
> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.
>
> (4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.
>
> (5) The duration of the guardianship.
>
> (6) The court shall prefer limited guardianship.

20 Pa.C.S.A. § 5512.1(a).

The record indicates that this case proceeded without adherence to Orphans' Court Rules and the PEF Code. For example, the only medical evidence **of record** to support a finding of M.A.'s incapacity, consists of the letter purportedly written by M.A.'s physician, John Haretos, M.D. The

orphans' court appears to have accepted Dr. Haretos' unauthenticated determination that M.A. suffers from dementia and is incapable of caring for himself. The court did so without ruling on Attorney Capone's objection based on her lack of opportunity to question Dr. Haretos, and without making findings regarding Dr. Haretos' expertise. **See** N.T., 7/26/21, at 5-7, 9-10; **see also**, Pa.C.S.A. §§ 5512.1(a), 5518; Pa.O.C.R. 14.3.

The orphans' court did not hear testimony or render findings, but focused on family acrimony, including the validity of wills, while urging the parties to settle. The court referenced the parties' allegations of wrongdoing, but did not specifically address the allegations or the suitability of the daughters to serve as M.A.'s guardians. Although the parties arrived at an agreement when they appeared before the court on July 26, 2021, they continued to disagree. Consequently, the court conducted a hearing three months later, and the agreement was amended to name a third-party, Ameriserv, as guardian of the estate. **See** N.T., 11/1/21, at 2-43.

Of further significance, the court did not consider a less restrictive alternative to guardianship, possibly the 2019 or 2021 POA, in violation of 20 Pa.C.S.A. § 5512.1(a)(3). With respect to Attorney Dempsey's issues, the court struck Attorney Dempsey's appearance without hearing any evidence or argument, and without considering the wishes of M.A. **See Rosengarten**, **supra**; 20 Pa.C.S.A. § 5512.1(a)(1) and (2). Attorney Henry-Taylor did not raise these considerations on M.A.'s behalf.

For the above reasons, we are constrained to reverse and remand for further proceedings regarding representation of M.A., including a determination of whether M.A. is incapacitated, as follows:

- Hearings shall comply with 20 Pa.C.S.A. §§ 5501, 5502, 5518, and 5512.1(a), and all other relevant portions of the PEF Code.

- If the parties wish to submit additional written materials prior to the hearing, they must do so in compliance with the Orphans' Court Rules of Procedure.

- If Attorneys Capone and Dempsey wish to pursue claims that they were retained by M.A., they shall submit copies of their engagement letters in compliance with Pa.O.C.R. 14.4(b).

- The orphans' court shall make findings of fact pursuant to 20 Pa.C.S.A. § 5512.1(a) and shall specifically determine whether

  (1)   M.A. is incapacitated as alleged in the petition; and whether

  (2)   M.A. has the capacity to retain private counsel.

- If the orphans' court finds M.A. has capacity to retain counsel, the court shall determine M.A.'s preferred counsel and allow representation by that counsel.

- If M.A. lacks capacity to retain counsel, the court shall determine whether M.A.'s choice of counsel may be honored to the extent possible, and whether any fee agreements between Attorney Capone and/or Attorney Dempsey and M.A. are voidable;

- If the orphans' court finds M.A. incapacitated, the court shall determine whether guardianship is the least restrictive alternative. In so doing, the orphans' court shall rule on the validity of the 2019 and 2021 POAs.

- In light of competing allegations of the sisters' wrongdoing, the orphans' court shall make specific findings as to the suitability of M.A.'s current living situation; whether Adraine's receipt of $1,500.00 per month constitutes an appropriate charge against the estate, and, if it does not, to determine the appropriateness of a surcharge, and whether the appointment of an independent guardian is necessary.

Accordingly, we vacate the orders of July 27, 2021, December 10, 2021, and January 20, 2022, and remand for further proceedings.[9]

Orders vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2022

---

[9] Given our disposition, we need not address Attorney Dempsey's second issue.