J-S37004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF EUGENIA M. FINNIE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MAUREEN ZUBER, CO-EXECUTRIX | : | |
| | : | |
| | : | No. 1476 EDA 2022 |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2015-X2023

| | | |
|---|---|---|
| IN RE: ESTATE OF EUGENIA M. FINNIE, PRINCIPAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MAUREEN ZUBER | : | |
| | : | |
| | : | No. 1477 EDA 2022 |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2016-X2427

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 27, 2023**

In these appeals which we have consolidated *sua sponte*, Maureen Zuber challenges the order entered in the above-captioned cases that disposed of the objections to the accounts of (1) Ms. Zuber and her sister, Denise Finnie, as co-executrices of the estate of their mother, Eugenia M. Finnie ("Decedent"), and (2) Ms. Zuber as Decedent's power of attorney ("POA").  Since the rulings of the orphans' court are based upon a

misapprehension of the law, we vacate the order and remand for further proceedings consistent with this memorandum.

We glean the following factual background from the notes of testimony and the parties' stipulation of facts. Decedent was married to George Finnie, the father of Ms. Zuber and Ms. Finnie. The parents purchased a home on Hampton Road together with Ms. Finnie in 1992. In 1996, the Hampton Road house was transferred into the parents' name alone after the couple paid an $85,000 entrance fee to move into a two-bedroom apartment a few miles away at Gloria Dei Farms independent-living community.

In 2000, Decedent executed a will leaving the house and all its contents to Ms. Finnie, with the residual estate left in equal shares to Ms. Finnie and Ms. Zuber in the event that Decedent's husband predeceased her, which he did in 2007. Thereafter, Decedent opened joint checking and savings accounts at Fox Chase Bank with Ms. Zuber as the joint owner with survivorship. Decedent also executed a POA naming Ms. Zuber as her agent with Ms. Finnie as successor agent. In 2012, Decedent transferred the Hampton Road house to Ms. Finnie. In the following years, the Fox Chase Bank checking account ("FC Joint Account"), from which Decedent paid her monthly expenses, typically had a balance of between $10,000 and $20,000.

Decedent continued to reside in her apartment at Gloria Dei Farms with the help of home-care aides until March 2014, when Decedent's physical condition had deteriorated to the point where more assistance was necessary.

Decedent moved into The Park, an assisted-living facility on the same grounds as Gloria Dei Farms. Decedent's rent at The Park was more than $5,000 per month, which was significantly more expensive than what she had paid at her apartment, such that Ms. Zuber paid $5,850 from her own funds to cover the first month's expenses at The Park. Ms. Zuber subsequently requested and received the return of the $85,000 Gloria Dei Farms deposit, which she deposited into the FC Joint Account. Ms. Zuber never used the funds in the FC Joint Account for her own expenses and never deposited her own funds into it. Ms. Zuber paid Decedent's monthly rent and fees from the FC Joint Account until Decedent died on May 1, 2015, at the age of ninety-two. Ms. Zuber paid for Decedent's funeral expenses from the FC Joint Account, which, at the time of Decedent's death, had a balance of approximately $69,400.

Decedent's will was submitted for probate by Ms. Zuber and Ms. Finnie, who were granted letters testamentary as co-executrices after appearing at the Register of Wills with Christine Embery Steele, Esquire.[1] Unsurprisingly, since the sisters' relationship had for years been, as Ms. Finnie described, "either strained or nonexistent," conflict arose. *See* N.T. Objections, 9/14/21, at 39.

---

[1] Attorney Steele had prepared estate planning documents for Decedent and her husband, including the POA that named Ms. Zuber and Ms. Finnie as agent and successor agent. Although her surname changed during the course of the litigation of this case, we refer to her as Attorney Steele for ease of discussion.

Ms. Finnie, through counsel Robert L. Adshead, Esquire, filed a petition to remove Ms. Zuber as co-executrix and for accountings, alleging that Ms. Zuber had engaged in self-dealing and had converted assets of Decedent's estate. Ms. Zuber filed a petition to remove Ms. Finnie as co-executrix, contending, *inter alia*, that Ms. Finnie refused to communicate with Ms. Zuber, precluding proper and timely administration of the estate. Following discovery, the court ordered the co-executrices to cooperate with each other and their individual counsel to provide Attorney Steele all she needed to prepare the estate's tax returns and account and to report back to the court.

The initial account, filed on June 8, 2020, by Attorney Steele and verified by Ms. Zuber, listed the gross estate at approximately $314,000, with the assets mainly including stocks, bonds, and a Morgan Stanley account. Ms. Finnie filed objections, asserting, *inter alia*, that the account did not include the $85,000 refund from Gloria Dei Farms that Ms. Zuber had deposited in the FC Joint Account of which she was the lone beneficiary, and should include disbursements to Ms. Finnie of half of that refund as well as Ms. Finnie's counsel fees. Ms. Zuber also objected, contending that the account did not reflect the value of two of Decedent's diamond rings that Ms. Finnie received from Ms. Zuber on the day that the will was submitted to probate. On August 3, 2020, Ms. Zuber, through Attorney Steele, filed an amended account, and the parties renewed their objections.

Meanwhile, Ms. Finnie also pursued a petition to compel an accounting of Ms. Zuber's agency pursuant to Decedent's POA. First and amended accountings were filed by Ms. Zuber. Pertinent to this appeal, Ms. Finnie objected to Ms. Zuber's disbursement to herself of the $54,557.34 remaining in the FC Joint Account after Decedent's funerary expenses were paid therefrom.

Following discovery pursuant to a case management order that was repeatedly amended, the objections to the estate account and to Ms. Zuber's POA accounting were entertained by the orphans' court over a two-day hearing in September 2021. By order and opinion of March 30, 2022, the orphans' court confirmed both accounts with the modifications that: (1) Ms. Zuber was directed to refund $69,412.25 to the estate as a surcharge for breaching her duty as agent under the POA; and (2) the estate was to pay to Ms. Finnie any "legal fees related to representation of [Ms. Finnie] in her capacity as co-executrix," despite the fact that "[a]t trial, no evidence was related to these fees." Opinion and Adjudication, 3/30/22, at 17-18. The court in its Pa.R.A.P. 1925(a) opinion noted its acceptance of $11,289 as a fair and reasonable fee based upon Attorney Adshead's invoices that Ms. Finnie supplied in her post-trial memorandum. *See* Orphans' Court Opinion, 6/13/22, at 11.

Ms. Zuber filed a motion for reconsideration, which the orphans' court denied by order of April 26, 2022. Thereafter, Ms. Zuber filed a timely notice of appeal, and both she and the orphans' court complied with Pa.R.A.P. 1925.

Ms. Zuber presents the following questions for our consideration, which we have re-ordered for ease of disposition:

1. Did the [orphans'] court err when it relied, to the extent it did, on *In re Matter of Estate of Waite*, [260 A.3d 143 (Pa.Super. 2021) (non-precedential decision)]?

2. Did the [orphans'] court err when it found that [Ms. Zuber] commingled funds or breached any of her fiduciary duties under the applicable statute, 20 Pa.C.S. § 5601(e)?

3. Did the [orphans'] court err when it found that [Ms. Zuber] created a conflict of interest in violation of her fiduciary duties?

4. Did the [orphans'] court err when it found that [Ms. Zuber] engaged in self-dealing in violation of her fiduciary duties?

5. Did the [orphans'] court err when it found that [Ms. Zuber] was acting as agent under the 2007 POA when she deposited the refund check into the FC Joint Account?

6. Did the [orphans'] court commit an abuse of discretion when it found that co-executrices are obligated to pay "any portion of these legal fees related to representation of [Ms. Finnie] in her capacity as co-executrix"?

7. Did the [orphans'] court commit an abuse of discretion when it allowed [Ms. Finnie] to present post-trial evidence to support her claim for legal fees in her post-hearing memorandum?

Ms. Zuber's brief at 10 (cleaned up).

We begin with a review of the applicable legal principles. "When reviewing an order entered by the orphans' court, the decision will not be reversed unless there has been an abuse of discretion or a fundamental error

- 6 -

in applying the correct principles of law." ***Tr. Under Deed of Wallace F. Ott***, 271 A.3d 409, 416 (Pa.Super. 2021) (cleaned up). More specifically, "[b]ecause the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." ***Interest of M.A.***, 284 A.3d 1202, 1210 (Pa.Super. 2022) (cleaned up). "However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree." ***Id***. (cleaned up).

Ms. Zuber's first five issues are interconnected and all concern the orphans' court's interpretation and application of this Court's decision in ***Waite***, ***supra***, to conclude that Ms. Zuber should be surcharged $85,000 because, in depositing that amount into the FC Joint Account, she breached her POA duties.

Since the orphans' court believed itself to be bound to apply its reading of this Court's non-precedential ***Waite*** decision in making its ruling, we deem it appropriate to examine that case in detail.[2] In ***Waite***, the decedent had two children, Whitney and James. James was married to Lisa. In January 2014, the decedent executed a will, modified by a November 2014 codicil, that

---

[2] We note that, while this Court's non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, they are, as the term "non-precedential" suggests, not binding on lower courts except as law of the case. ***See*** 210 Pa.Code § 65.37(A).

named Lisa executor and distributed the bulk of the estate equally among Whitney, James, and Lisa. Shortly thereafter, on the same day, the decedent executed a POA making Lisa his agent, and also made Lisa the sole beneficiary of his credit union checking and savings accounts pursuant to the Multiple-Party Accounts Act ("MPAA"), 20 Pa.C.S. §§ 6301-6306. The decedent subsequently became a resident at a personal care home where most of his expenses were covered by insurance. The decedent decided to sell his main assets, namely a farm and farm equipment, and directed Lisa to put the proceeds of over $160,000 into the credit union savings account.

Lisa and the decedent's son James divorced in 2016. Lisa did not inform the decedent of the divorce, and she continued to serve as his agent pursuant to the POA. The decedent's pension and other income continued to be deposited into the credit union accounts of which Lisa was the beneficiary, growing to over $560,000. The decedent died in 2018, leaving Lisa the sole beneficiary of the credit union funds, while the rest of the decedent's estate, with a far less significant net value of $7,000, passed in equal shares to Lisa, James, and Whitney.

James and Whitney challenged the disposition of the decedent's assets, claiming, *inter alia*, that Lisa exerted undue influence over the decedent and that she violated her duties under the POA. After a trial, the court rejected the claim of undue influence, but concluded that Lisa did violate her POA duties, explaining as follows:

In large print covering less than one-quarter of a standard sheet of paper, the last page of the POA specifically referenced Chapter 56 of Title 20 and contained four specific affirmations that [Lisa] adopted as the decedent's agent. They included, "I shall exercise the powers for the benefit of the principal" and "I shall keep the assets of the principal separate from my assets." Those statements correspond with the duties enumerated in 20 Pa.C.S. § 5601.3(b)(1), which also obligated [Lisa] to "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest" and to "attempt to preserve the principal's estate plan, to the extent actually known by the agent, if preserving the plan is actually in the principal's best interest based on all relevant factors." 20 Pa.C.S. § 5601.3(b)(2) & (6). By acquiescing to the decedent's decision to name her as his designated beneficiary, [Lisa] violated each of the duties.

Although the evidence does not indicate that [Lisa] was depositing her own income into the decedent's accounts or transferring any of his money into hers—excepting the compensation she was legitimately receiving for her POA services—her status as his designated beneficiary meant, in effect, that his money was her money. She certainly understood that; she grasped right away that every penny would become hers to utilize as she wished once the decedent passed, and she certainly should have comprehended that the decedent's decision thus effectuated a commingling of their assets.

What [Lisa] unquestionably knew, moreover, was that her being the decedent's designated beneficiary did not comport with the terms of the January 6, 2014 will he had executed just five weeks before. She had read that will only days before taking the decedent to the credit union and thus knew that he only planned to leave her a third of the assets and wanted to divide the other two-thirds between James and Whitney. Yet she chose to remain silent on February 14, 2014 and every day thereafter and, knowing that all the money would eventually be hers, was content to see the balance of the decedent's accounts increase month by month. Knowing the money would eventually be hers, moreover, she raised no objection when the decedent instructed her to deposit the proceeds from the farm and equipment sales into his savings account.

As the record reflects, the risk envisioned in 20 Pa.C.S. § 5601.3(b)(2) was also realized when [Lisa] failed to keep her assets separate from the decedent's. Confronted with the likelihood of becoming hundreds of thousands of dollars richer as the decedent's designated beneficiary, she made no attempt to caution him about how it would affect his estate plan. Evidencing a pernicious mindset, moreover, she kept the designation a secret even from Whitney and James, her own husband—the only other people who would be affected and might force her to relinquish her claim to all of the decedent's liquid assets.

Further highlighting the conclusion that [Lisa] was acting in her own best interests, not the decedent's, was her continued silence during her and James's divorce. She knew the decedent wanted a third of his estate to go directly to his son. She knew the collective balance of his deposit accounts would have significantly increased the size of the estate. And she knew a divorce would ensure that James got none of that money.

Even assuming [Lisa] had convinced herself that the decedent did not want his money to pass through his estate, the only reasonable conclusion [Lisa] could have come to would have been that he wanted her and James to benefit from it, as she knew he believed even at the time of his death that they were still married. Even were it plausible that she was merely trying to honor the decedent's wishes when she initially accepted the benefit of being his designated beneficiary, therefore, her persistent failure to advise James . . . would effectively contradict the notion that she continued to afford the decedent's interests over her own.

*Waite*, *supra* (non-precedential decision at 9-11) (cleaned up).

On appeal, we affirmed the ruling of the trial court that Lisa had a conflict of interest under the POA. Specifically, we stated:

Following our review, we conclude that the record supports the trial court's finding that [Lisa] acted in a manner as to create a conflict of interest under 20 Pa.C.S. § 5601.3(b)(2). Furthermore, we find no abuse of discretion or legal error in the trial court's determination that [Lisa] ultimately placed her own self-interests ahead of those of the decedent. Under these circumstances, we find no basis to disturb the trial court's decision to direct [Lisa] to restore the credit union accounts to the

- 10 -

decedent's estate for distribution as a surcharge for the conflict of interest.

*Id*. (non-precedential decision at 23) (cleaned up).

Nonetheless, in affirming the result, we indicated that the trial court had erred insofar as it found that Lisa commingled her funds with that of the decedent and that Lisa's status as POA necessarily precluded her from being the beneficiary of the credit union accounts:

> **To the extent [Lisa] argues that that she did not specifically violate a duty prohibiting the commingling of funds and that her duties under the POA were ministerial, we agree**. Furthermore, the findings of the trial court suggest that the decedent remained competent to arrange his financial affairs even after the sale of the farm and equipment in 2014. For example, the trial court found that the decedent instructed [Lisa] to deposit the proceeds of the sale of the farm and equipment into the credit union accounts. We also agree that [Lisa] did not owe James a direct legal duty under the POA. Rather, [**Lisa**] **owed the decedent a duty to attempt to preserve the decedent's estate plan**. *See* 20 Pa.C.S. § 5601.3(b)(6). To the extent [Lisa] relies on the non-liability provision of the POA Act, we agree with [Lisa] that there was no inherent conflict of interest at the time the decedent initially designated [Lisa] as the beneficiary of the credit union accounts. However, as stated above, the trial court's ultimate finding was that [**Lisa**] **was acting under a conflict of interest with respect to the growth of the accounts**.

*Id*. (non-precedential decision at 21 n.5) (cleaned up, emphases added).

Hence, although the *Waite* Court disagreed with the trial court that Lisa had commingled funds by exercising the ministerial duty of depositing assets into the joint account pursuant to the decedent's instructions, we agreed that the other evidence supported its finding that Lisa breached her fiduciary duty not to create a conflict of interest. Specifically, we affirmed the trial court's

finding that Lisa had a conflict because, by keeping her divorce secret from the decedent and her beneficiary status secret from the other beneficiaries, she evinced a "pernicious mindset" to thwart the decedent's plan for his assets to be shared equally among the three beneficiaries of his will upon his death. In other words, we agreed that there was evidence of a conflict in interest because the agent allowed the joint account to grow to the point that it completely dwarfed the assets of the estate, namely $560,000 versus $7,000, ensuring that she would receive exponentially more than the one-third share that the decedent's estate plan envisioned.

Ms. Zuber's arguments concerning the orphans' court's interpretation and application of **Waite** are as follows.  Ms. Zuber contends that the orphans' court wrongly applied the version of the POA statute at issue in **Waite** that did not become effective until only a few months before Decedent died, well after Ms. Zuber became her agent and deposited the refund check into the FC Joint Account.  **See** Ms. Zuber's brief at 32-33.  Ms. Zuber asserts that there was no evidence that she violated any of the duties imposed by the applicable statute.  **Id**. at 34-41.  Instead, she maintains that the orphans' court improperly based its decision upon application of this Court's ultimate holding in **Waite** despite the clearly distinguishable legal and factual circumstances.  **Id**. at 44-53.

We begin by observing that, at the time Ms. Zuber became Decedent's agent and at the time she deposited the refund check into the FC Joint Account, the POA statute described the agent's duties as follows:

> An agent acting under a power of attorney has a fiduciary relationship with the principal. In the absence of a specific provision to the contrary in the power of attorney, the fiduciary relationship includes the duty to:
>
> (1) Exercise the powers for the benefit of the principal.
>
> (2) Keep separate the assets of the principal from those of an agent.
>
> (3) Exercise reasonable caution and prudence.
>
> (4) Keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

20 Pa.C.S. § 5601(e) (in effect January 26, 2004, to December 31, 2014).

Thereafter, § 5601.3, discussed and applied in **Waite**, took effect to generally require an agent to act in good faith and "in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest." 20 Pa.C.S. § 5601.3(a)(1). The amendment also specified more detailed duties, such as the duties to:

> (1.1) Keep the agent's funds separate from the principal's funds unless:
>
> (i) the funds were not kept separate as of the date of the execution of the power of attorney; or
>
> (ii) the principal commingles the funds after the date of the execution of the power of attorney and the agent is the principal's spouse.

- 13 -

(2) Act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest.

. . . .

(6) Attempt to preserve the principal's estate plan, to the extent actually known by the agent, if preserving the plan is consistent with the principal's best interest based on all relevant factors, including:

(i) The value and nature of the principal's property.

(ii) The principal's foreseeable obligations and need for maintenance.

(iii) Minimization of taxes, including income, estate, inheritance, generation-skipping transfer and gift taxes.

(iv) Eligibility for a benefit, program or assistance under a statute or regulation.

20 Pa.C.S. § 5601.3(b).

The orphans' court acknowledged that a different statute was at issue in **Waite**, but nonetheless deemed it instructive. **See** Opinion and Adjudication, 3/30/22, at 7 ("Analyzing the agent's actions here, in light of language of the statute as it was in effect in 2014, this court reaches a similar conclusion."). The orphans' court then explained its understanding and application of **Waite** as follows:

[Ms. Zuber] as agent under a [POA] had a duty, which she acknowledged, to keep the funds and assets of [Decedent] separate from her own. [Ms. Zuber] also had a duty to exercise her powers only for the benefit of the principal. **Her deposit of the refund check into an account of which she was the beneficiary at death violated these fiduciary duties**. The proper remedy is a surcharge in the amount of $85,000, to be repaid by [Ms. Zuber] to [Decedent's estate]. . . . [T]he amount

- 14 -

of this surcharge will be reduced by the amounts spent from these funds during [Decedent]'s lifetime for [Decedent]'s benefit.

. . . .

In her post-trial memorandum, [Ms. Zuber] argues that the deposit of [Decedent]'s check into the joint account did not constitute commingling because, under 20 Pa. C.S. § 6303(a), the funds in the joint account continued to belong to [Decedent] during her lifetime.  However, the Superior Court concluded in . . . *Waite* that the agent who placed funds in an account in which she had a beneficial interest, even though her interest was contingent upon the death of the principal, nevertheless violated her duties as an agent under a power of attorney.  Thus, when [Ms. Zuber] deposited the refund check of $85,000 into an account of which she was a joint owner, with a right of survivorship, she violated her fiduciary duty under the power of attorney statute.

Imposing a surcharge on [Ms. Zuber] for the deposit of the check into the joint account may, at first glance, seem a harsh result.  [Ms. Zuber] testified that the bank accounts had become joint in 2010, and that the joint checking account was the main account that she and her mother used for the payment of bills. She also testified that the account balance had become low and she needed to deposit funds into a checking account to continue to pay her mother's expenses for her care, maintenance, and residence at The Park.

Nevertheless, the Superior Court has determined that an agent **shall be surcharged** for breaching a fiduciary duty by depositing assets payable to the principal in her sole name into an account of which the agent will become a beneficiary.  [*Waite*, *supra* (non-precedential decision at 21).[3]]  That is precisely what happened here, and [Ms. Zuber] is therefore subject to a surcharge.

---

[3] What the cited portion of the *Waite* decision actually states is the uncontroversial principle that, "[o]nce self-dealing is established, a surcharge **may** be applied to a fiduciary, not as compensation for any loss to the estate, but as punishment for the fiduciary's improper conduct." *In re Matter of Estate of Waite*, 260 A.3d 143 (Pa.Super. 2021) (non-precedential decision at 21) (quoting *In re Estate of Harrison*, 745 A.2d 676, 680 (Pa.Super. 2000)) (emphasis added).

Opinion and Adjudication, 3/30/22, at 7-9 (emphases added). Indeed, the orphans' court went so far as to say that:

> The practical implication of . . . the Superior Court's ruling in . . . ***Waite***, interpreting the statute, is that an agent under a power of attorney (other than a spouse), in order to maintain the principal's assets as separate from their own, must deposit those assets into an account in the principal's sole name and not into a joint account, even if this requires opening a new account in the principal's sole name.

***Id***. at 9.

From the above, it is plain that the orphans' court misapprehended and misapplied the applicable law. To the extent ***Waite*** has persuasive value in resolving the case *sub judice*, it militates against the finding of a breach of fiduciary duty by Ms. Zuber.

First, contrary to the orphans' court's perception, the ***Waite*** Court expressly **rejected** the ideas that: (1) there was an inherent conflict of interest in an agent acquiescing to being a beneficiary of a joint account; and (2) an agent's ministerial act of depositing the principal's funds into a joint account of which she is a designated beneficiary constituted commingling of funds in violation of her POA duties. ***See Waite***, ***supra*** (non-precedential decision at 21 n.5). ***Cf.*** Trial Court Opinion, 6/13/22, at 6 ("Simply put, an agent does not 'keep separate' [the principal's] assets when she deposits them into a joint account."). Hence, the orphans' court's basis for finding a breach of duty is a result of an error of law.

The actual basis of the *Waite* Court's decision to affirm the trial court's finding that the agent had a conflict of interest was that the agent violated her duty to preserve the decedent's estate plan in accordance with § 5601.3(b)(6). Specifically, by keeping her divorce secret from the decedent and her beneficiary status secret from the other beneficiaries, the agent in *Waite* evinced a "pernicious mindset" to thwart the decedent's plan. *Waite*, *supra* (non-precedential decision at 10). In other words, this Court agreed that there was evidence in the record to support the finding of a conflict of interest because the agent allowed the joint account to continue to grow to the point that it completely dwarfed the assets of the estate by a ratio of more than eighty to one.

Section 5106.3(b)(6)'s obligation to preserve the principal's estate plan did not exist at the time Ms. Zuber deposited the refund check into the FC Joint Account, but became effective on January 1, 2015. The legislation that repealed § 5601(e) and enumerated an agent's duties within § 5601.3 provided as follows concerning the new statute's applicability:

Section 9. The following shall apply:

(1) Except as provided by this section, the provisions of this act apply to powers of attorney created before, on or after the respective effective dates of such provisions, **but do not apply to the acts or omissions of agents, or third parties presented with instructions by agents, that occur before such respective effective dates**.

(2) Except as provided by this section, the provisions of this act apply to judicial proceedings concerning a power of attorney commenced before, on or after the respective effective dates of

such provisions, unless the court finds that application of a provision of this act would substantially interfere with the effective conduct of the judicial proceeding or prejudice the rights of a party, in which case that provision does not apply and the superseded law applies.

(3) The amendment, addition or repeal of 20 Pa.C.S. §§ 5601(b), (c), (d) and (e.2), 5601.2, 5601.4, 5602(a)(5) and (17) and 5603 apply only to powers of attorney created on or after the effective dates of those provisions.

(4) The amendment of 20 Pa.C.S. §§ 5601(f) and 5608 shall apply retroactively to acts performed after December 15, 1992, and to judicial proceedings commenced prior to the effective dates of those provisions.

(5) In interpreting and applying the amendment or addition of 20 Pa.C.S. §§ 5601(f), 5608, 5608.1, 5608.2 and 5611, a court shall give due consideration of the intent of the General Assembly to reverse the interpretation of 20 Pa.C.S. § 5608 as set forth in ***Teresa M. Vine v. Commonwealth of Pennsylvania, State Employees' Retirement Board***, 9 A.3d 1150 (Pa. 2010).

Section 10.  This act shall take effect as follows:

(1) The amendment or addition of 20 Pa.C.S. §§ 5601(f), 5608, 5608.1, 5608.2, 5611 and 5612 shall take effect immediately.

(2) This section shall take effect immediately.

(3) The remainder of this act shall take effect January 1, 2015.

2014, July 2, P.L. 855, No. 95 (emphasis added).  Since neither § 5601(e) nor § 5601.3 is included in any exceptions, pursuant to § 9(1) of the act, while the new duties enumerated in § 5601.3 do apply to POAs created before January 1, 2015, they do not apply to the acts or omissions of agents that occurred before January 1, 2015.

Here, Ms. Zuber's deposit of the refund check into the FC Joint Account occurred in August 2014, a time when she had no specific statutory duty to preserve Decedent's estate plan. Ms. Finnie's surviving breach-of-duty allegations as to the FC Joint Account relate solely to the **deposit** of the refund check, not to any management of the FC Joint Account by Ms. Zuber after the effective date of § 5601.3(b)(6).[4] **See** Objections to Amended Account (Estate), 10/12/20, at ¶ 1; Additional Objections (Estate), 3/8/21, at ¶¶ 1-3. Consequently, the discussion of the law supporting the trial court's finding of the conflict of interest in **Waite** is inapplicable in the instant case.[5]

---

[4] Ms. Finnie also averred that Ms. Zuber converted the FC Joint Account funds by improperly adding herself as beneficiary of the account in 2010 and distributing the remaining funds to herself after Decedent's death. **See** Objections to Amended Account (POA), at ¶¶ 3-4. However, the orphans' court credited Ms. Zuber's uncontradicted testimony that Decedent herself added Ms. Zuber as a joint owner of the account and held that Ms. Finnie failed to present evidence to overcome the presumption that the funds in the joint account at the time of Decedent's death passed to Ms. Zuber as a matter of law. **See** Orphans' Court Opinion, 3/30/22, at 4 (citing N.T. Objections, 9/14/21, at 85-86), 11. **See also** 20 Pa.C.S. § 6304(a) ("Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created.").

[5] The POA in **Waite** was also executed before the effective date of § 5601.3. Therefore, its provisions did not apply to acts or omissions of the agent before January 1, 2015. However, the parties proceeded as if the amendment applied to the allegations at issue. **See In re Matter of Estate of Waite**, 260 A.3d 143 (Pa.Super. 2021) (non-precedential decision at 19 n.4). Moreover, the agent's failure in that case to consult with the decedent about his wishes, and to instead subvert the known estate plan by retaining nearly all of his assets in accounts that would not pass through his estate, occurred on a continuing basis until the decedent died in 2018. Hence, unlike in the instant case, § 5601.3 was applicable to the allegations of breach in **Waite**.

Since § 5601.3 cannot serve as a basis for concluding that Ms. Zuber's act of depositing the $85,000 refund check into the FC Joint Account constituted a breach of her fiduciary duty, we cannot affirm the finding of the orphans' court unless it is supported by facts of record evincing a violation of a duty in existence at the time of the deposit. In particular, the certified record must establish that Ms. Zuber's act amounted to a failure to (1) exercise her agency for the benefit of Decedent, (2) keep her assets separate from those of the Decedent, or (3) exercise reasonable caution and prudence. **See** 20 Pa.C.S. § 5601(e) (in effect January 26, 2004, to December 31, 2014).

Ms. Finnie argues that the orphans' court properly found a breach of duty here because the act of depositing the refund check into the FC Joint Account was inconsistent with her duties to act for the benefit of Decedent and keep her funds separate. **See** Ms. Finnie's brief at 23. As discussed above, the deposit of Decedent's funds into the joint account did not constitute commingling since there is no evidence that Ms. Zuber contributed any funds to the account. **See Waite**, **supra** (non-precedential decision at 21 n.5) ("[T]here was no inherent conflict of interest at the time the decedent initially designated [her agent] as the beneficiary of the [joint] accounts."). **See also** 20 Pa.C.S. § 6303(a) ("A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.").

The only alleged basis for finding a breach by Ms. Zuber that can serve to validate the order of the orphans' court is that the deposit was inconsistent with Ms. Zuber's duty to act for the benefit of Decedent. This is undiscernible from the certified record as it stands.

As a result of its misbelief that the deposit into the joint account was a *per se* breach of duty, the orphans' court deemed irrelevant evidence of Decedent's directions to Ms. Zuber and whether Ms. Zuber exercised her powers for Decedent's benefit. For example, the orphans' court stated the following in its adjudication opinion:

> The parties spent considerable time and effort presenting evidence regarding [Decedent]'s cognitive capacity.[2] [Ms. Finnie] disputes both [Ms. Zuber]'s assertion that [Decedent] directed her to deposit the check into the joint bank account, and that [Decedent] at that time had the capacity to do so. The Superior Court recently held that, even where the decedent directed the agent to deposit his funds into a certain account, the agent violated her duties when she deposited the funds into an account in which she had a beneficial interest. ***See*** . . . ***Waite***, ***supra***. Thus, **this court need not determine whether or not [Decedent] actually instructed the agent to deposit the funds in any particular account, nor whether [Decedent] had the capacity at that time to direct where to deposit the funds**. The Superior Court opinion in . . . ***Waite*** makes clear that it was improper for the agent to deposit funds into an account in which she had a beneficial interest, even where the principal may have directed her to do so. ***See id***. [(non-precedential decision at 22-23)].
>
> _____
> [2] The record is replete with discussion of [Decedent's] dementia diagnosis and cognitive abilities; however, there is no claim of undue influence in any of the underlying pleadings. While this issue was raised by [Ms. Finnie] in her post-trial memorandum, the parties agreed on the record that there are no assertions of undue influence. . . . Instead, the issue was characterized as whether [Decedent]

- 21 -

had capacity to direct the deposit of the check into a certain account. Based upon the pleadings and the testimony, and the positions taken by counsel at trial, this court need not address the questions of undue influence or weakened intellect.

Opinion and Adjudication, 3/30/22, at 8. **See also** N.T. Objections, 9/14/21, at 149-50 (orphans' court indicating that, irrespective of any directions expressed by the principal, it is "improper" for a POA agent to "commingle funds" by "deposit[ing] the check with her endorsement in a joint account"). The court reiterated in its Pa.R.A.P. 1925(a) opinion that it believed that the issue of "whether [Decedent] had the capacity to provide direction, and concomitantly, whether she in fact expressed any direction regarding the deposit of the check need not be resolved, because neither inquiry has any relevance to the question whether [Ms. Zuber] . . . breached her fiduciary duty." Orphans' Court Opinion, 6/16/22, at 4-5.

As our above discussion makes clear, evidence concerning Decedent's best interests and whether Decedent was competent to, and in fact did, instruct Ms. Zuber where to place the refund check is pertinent to the breach-of-duty analysis. **See**, **e.g.**, N.T. Objections, 9/14/21, at 165-71 (Ms. Zuber explaining Decedent's concerns about verifying that there were ample funds in her checking account to pay her expenses and how she became upset to see the balance low). The orphans' court not only failed to consider the existing evidence on these issues relevant to its decision, but foreclosed the parties from fully developing the record in this respect. Consequently, we are

constrained to remand for a new trial for the orphans' court to entertain the relevant evidence and determine whether Ms. Finnie is able to establish that Ms. Zuber's August 2014 deposit of the Gloria Dei Farms refund check into the FC Joint Account violated her duty to act for the benefit of Decedent.[6]

Order vacated.[7] Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2023

---

[6] Our order for a new trial moots Ms. Zuber's claims that the orphans' court abused its discretion in reopening the record to allow Ms. Finnie to establish the amount of reasonable expenses, in this case attorney fees, to which she is entitled to have paid by the estate insofar as she incurred them in her role as co-executrix as a cost of administering the estate. **See** 20 Pa.C.S. §§ 3537, 3392(1). Ms. Zuber will have a full and fair opportunity to challenge in the new proceeding Ms. Finnie's entitlement to such costs and the nature and amount of the attorney bills, and to appeal the final result to this Court if she disagrees with the findings of the orphans' court.

[7] Ms. Finnie filed in this Court an application seeking costs, attorney fees, and interest on the surcharge should this Court affirm the order of the orphans' court and determine that Ms. Zuber was dilatory in violating various Rules of Appellate Procedure. **See** Application For Further Costs, Counsel Fees, and Damages, 11/3/22. Since we have not affirmed the order of the orphans' court, but rather have vacated it based upon the error of law Ms. Zuber alleged, we deny Ms. Finnie's application.