J-S02037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF: D.W., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1805 EDA 2023 |

Appeal from the Order Entered November 28, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2022-X3995

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED FEBRUARY 27, 2024**

D.W. appeals from the order entered on November 28, 2022, in the Court of Common Pleas of Montgomery County Orphans' Court Division, adjudicating him to be an incapacitated person and appointing Kevin Ryan, the principal, and Debbie Smith of Commonwealth Guardian Services, LLC, as plenary permanent guardians of D.W.'s person and estate under the Probate, Estates, and Fiduciaries Code, 20 Pa.C.S.A. §§ 5501-5555.[1]  After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The order at issue is appealable as of right pursuant to Pa.R.A.P. 342(a)(5) ("An appeal may be taken as of right from...orders of the Orphans' Court Division...determining the status of... guardianship[.]").

The relevant facts and procedural history are as follows: On October 14, 2022, St. Luke's University Hospital ("St. Luke's") filed a petition for adjudication of incapacity and appointment of emergency guardian of the person and estate of D.W., who was born in December of 1948. In the petition, St. Luke's averred D.W. was a patient at St. Luke's, and he was diagnosed with "hallucinations, paranoid schizophrenia, diffuse cognitive dysfunction, psychotic disorder, [and] acute metabolic." Petition, filed 10/14/22, at 1. St. Luke's averred D.W. required "placement in a skilled nursing facility with 24/7 care due to total impairment." *Id.* St. Luke's indicated that, because of his impairment, D.W. was unable to manage or communicate decisions regarding his financial affairs or medical care. Thus, St. Luke's requested the orphans' court find D.W. is totally incapacitated and appoint a guardian for D.W.

In support of its petition, St. Luke's attached the expert report of Christine Ramirez, M.D. ("Dr. Ramirez"), who indicated she admitted D.W. to St. Luke's on September 2, 2022, and she has been an active part of his care team since that date. She noted D.W. was evaluated by psychiatric staff on September 6, 2022, as well as a neuropsychologist on September 9, 2022. She indicated D.W. has been diagnosed with "paranoid schizophrenia, unspecified psychotic disorder, acute metabolic encephalopathy, and diffuse cognitive dysfunction[.]" Report of Dr. Ramirez, dated 10/7/22, at 2. She noted D.W.'s symptoms/manifestations include "bizarre and paranoid

statements, thought processes that are disorganized, concrete, and contradictory at times, [and] difficult to follow or understand in conversation." *Id.* She opined that, due to the mental disorders set forth *supra*, D.W. is totally incapacitated and not competent to make decisions for himself.

By order entered on October 17, 2022, the orphans' court determined that no emergency existed; however, the orphans' court listed the matter as a petition for adjudication of incapacity and appointment of permanent guardian of the person and estate with a hearing date of November 28, 2022. The orphans' court directed that D.W. be provided with notice of the hearing. Moreover, the orphans' court appointed E. Negro Pile, Esquire, as legal counsel to represent D.W.

On November 28, 2022, the orphans' court held a hearing on the petition. Dr. Ramirez testified she is board certified in general surgery and surgical critical care, and she has been on faculty at St. Luke's since 2017. N.T., 11/28/22, at 4. She noted that "[a]s a trauma physician, [she] receives a lot of critically ill patients. And so [she] work[s] in conjunction with multidisciplinary teams." *Id.* at 5. She noted she often works "in conjunction with psychiatry and neuropsychology to determine if [patients] have competency[.]" *Id.*

Dr. Ramirez testified D.W. was admitted to St. Luke's in September of 2022, with right rib fractures, multiple spine fractures, and he was "in shock from sepsis from bilateral kidney stones." *Id.* at 7. He further had renal

failure from the sepsis and was mentally altered. *Id.* She noted D.W. had a "prior diagnosis of schizophrenia[.]" *Id.* Dr. Ramirez recommend that D.W. go to rehabilitation due to his medical conditions; however, he refused. *Id.* at 7-8. Given D.W.'s prior schizophrenia diagnosis, as well as his communication limitations, Dr. Ramirez became "concerned about his thought processes." *Id.* at 8.

Accordingly, Dr. Ramirez "got psychiatry involved" and then requested an evaluation by Thomas Sugalski, Ph.D., who is a neuropsychologist. *Id.* Upon evaluation, Dr. Sugalski determined D.W. "had impaired executive functioning [such] that he…did not have the capacity to make fully informed medical decisions." *Id.* Additionally, Dr. Ramirez testified that, independent of Dr. Sugalski's findings, she concluded D.W. is "incapacitated and totally impaired." *Id.* Specifically, Dr. Ramirez opined D.W. is impaired "in terms of his executive functioning," he cannot take care of himself, and he is unable to make or understand the decisions needed for his safety. *Id.* at 9. She noted D.W. "was homeless," and "his plan for leaving the hospital was to stay in a tent behind Walmart or in the woods." *Id.* She noted D.W. had no understanding of the complexity and seriousness of his medical issues. *Id.*

Dr. Ramirez reiterated her opinion, to a reasonable degree of medical certainty, that, based upon her own evaluations, as well as in consultation with the psychiatry staff and Dr. Sugalski, D.W. was "incapacitated and totally impaired" due to the mental issues discussed in her report. *Id.* Consequently,

Dr. Ramirez recommended D.W. be placed in a skilled nursing facility so that he can be closely monitored and ensure he is receiving proper treatment for his various health conditions. *Id.* at 10. She noted that, prior to his hospitalization in September of 2022, D.W. was diagnosed with kidney stones; however, he neither took his medication nor followed up with medical physicians to address the issue. *Id.* at 10-11. She indicated D.W. has impaired cognition, so for his own safety, he needs full-time care. *Id.* at 11.

On cross-examination, Dr. Ramirez indicated Dr. Sugalski performed a mini-mental status exam on D.W. *Id.* She indicated that, as a result of this exam, Dr. Sugalski concluded D.W.'s "auditory selective attention was average[; however,] [h]is auditory vigilance…was impaired. [H]is information processing speed was within normal limits." *Id.* at 13. She explained that, in layman's terms, this means that "you can ask him a question, or you can talk to him, and he can process it. But in terms of paying attention to those things, he may not always do so." *Id.*

She further noted the mini-mental exam revealed D.W.'s "language functioning" was within normal limits; however, "his fluency was impaired." *Id.* She explained that, in layman's terms, this means D.W.'s ability to retrieve words was impaired. *Id.* Additionally, D.W.'s comprehension of complex material, such as his ability to understand medical diagnosis and give informed consent regarding treatment, was also impaired. *Id.* at 13-14. She

noted that D.W.'s memory functioning, such as his ability to recall information, was impaired. *Id.* at 14.

Dr. Ramirez confirmed that, when she conducted her assessment and completed her expert report, she concluded D.W. was "totally impaired" as to receiving and evaluating information, caring for himself, taking care of his own daily needs, and managing his finances. *Id.* at 16. She noted she continues to hold these opinions. *Id.* Accordingly, she recommended to the orphans' court that D.W. be appointed a guardian to manage his health and financial decisions. *Id.*

Will Anthony, who is a case manager in the trauma department at St. Luke's, testified D.W. was brought via ambulance to St. Luke's Upper Bucks Campus on September 2, 2022; however, due to the high level of care required for D.W.'s injuries, he was transferred to St. Luke's Bethlehem Campus at which time Mr. Anthony became D.W.'s case manager. *Id.* at 19. Mr. Anthony indicated that, when D.W. was admitted to St. Luke's, he had no previous chart with St. Luke's, no wallet, and no form of identification. *Id.* at 20.

Mr. Anthony discussed family and friends with D.W., who conveyed he had no family or friends with whom he communicated. *Id.* Mr. Anthony attempted to contact D.W.'s son, D.B.; however, after an exhaustive search, D.B. could neither be located nor contacted. *Id.* Thus, "knowing that [D.W.] needed a higher level of care and kind of full-time care in a nursing facility,

which [D.W.] was refusing to do, [St. Luke's began] the guardianship process." *Id.*

Mr. Anthony indicated he has been "scouring" skilled nursing facilities to find a facility, which will accept D.W. as a long-term patient. *Id.* at 21. He noted that, aside from D.W.'s personal belongings, he has been unable to identify any assets, bank accounts, or property belonging to D.W. *Id.* He also was unable to locate any "powers of attorney, wills, or advance directives" executed by D.W. *Id.* He found no evidence that D.W. had either served in the military or had received assistance from any social service agencies. *Id.* at 22.

Mr. Anthony indicated D.W. has "some complex medical conditions," which require a high level of care. *Id.* He noted D.W. needs "drain management and need[s] to make sure that those areas are kept clean and well maintained and has adequate follow-up." *Id.* He agreed with Dr. Ramirez that D.W. needs "24/7 oversight by nursing and physicians to ensure that he is well maintained." *Id.* He testified D.W. needs a guardian to make financial and medical decisions, as well as execute necessary documents so that D.W. may receive full-time care. *Id.* He opined "permanent guardianship [is] the least restrictive alternative under the circumstances[.]" *Id.*

Mr. Anthony noted D.W. was participating in the hearing via Zoom, and as was customary, D.W. was in bed. *Id.* at 23. He noted that, when hospital staff encourages D.W. to walk or move around, he often refuses to cooperate.

*Id.* Mr. Anthony testified that, since a neuropsychologist determined D.W. does not have sufficient mental capacity, St. Luke's staff has been making decisions for D.W. and performing full care. *Id.* at 24.

St. Luke's offered Mr. Ryan and his company as a permanent guardian for D.W. and his estate. Kevin Ryan, who is the principal of Commonwealth Guardian Services, LLC, testified that, if the orphans' court so orders, he, as well as Debbie Smith, who is another certified guardian at the company, would be able to handle permanent guardianship matters for D.W.'s person and estate. *Id.* at 27-28. He noted he and Ms. Smith have all necessary Pennsylvania State Police clearances, as well as liability insurance. *Id.* at 29. There "have never been any claims on the policy and there has been no negative marks on there." *Id.*

Mr. Ryan testified that, if the orphans' court appoints him as D.W.'s permanent guardian, the first step is to conduct an extensive background check to confirm D.W.'s identity. *Id.* at 30. Next, he would have a care conference to determine D.W.'s medical issues so that he can provide the best decision-making and available professional resources. *Id.* As guardian of the estate, he would investigate whether D.W. has any bank accounts, life insurance policies, and/or IRAs, and if so, garner the assets to provide for D.W.'s medical care. *Id.* at 31. Mr. Ryan confirmed he has no conflicts, which would prevent him from serving as a guardian for D.W. *Id.*

Attorney Piles informed the orphans' court that he met with his client, D.W., on November 2, 2022, at St. Luke's. *Id.* at 32. He noted D.W. was in a hospital bed at this time. *Id.* He opined D.W. needs some assistance and would benefit from the support of a guardian. *Id.* at 33.

At the conclusion of the hearing, the orphans' court held as follows:

> [B]ased upon the evidence received and the record following a hearing, the [orphans'] court finds by clear and convincing evidence that [D.W.] is adjudged a totally incapacitated person.
>
> The [orphans'] court finds that [D.W.] suffers from hallucinations, paranoid schizophrenia, diffuse cognitive dysfunction, psychotic disorder, and acute metabolic, [which are] conditions that totally impair his capacity to receive and evaluate information effectively and to communicate decisions concerning managing his financial affairs or to meet the essential requirements for his physical health and safety.
>
> The [orphans'] court finds that there is no less restrictive alternative to the appointment of a guardian of the estate and that a guardian of the estate is medically necessary to protect and advocate for the needs, welfare, and interests of [D.W.].
>
> Kevin Ryan, the principal, and Debbi Smith of Commonwealth Guardian Services, LLC, are hereby appointed plenary permanent guardians of the estate of [D.W.]. Bond is waived.
>
> The guardian of the estate is directed to file an inventory within three months of today's date listing [D.W.'s] real and personal property pursuant to Pennsylvania law.
>
> In addition, the guardian of the estate shall file a report every year on or before the anniversary of today's date containing all information required by statute.
>
> The guardian of the estate has the authority and the responsibility to manage and use [D.W.'s] property for his benefit in accordance with Pennsylvania law.
>
> The guardian of the estate is permitted to spend income for [D.W.] without the [orphans'] court's written approval.

The guardian of the estate has the authority to expend principal up to $16,000 or the maximum allowable amount in order to establish a burial reserve or an irrevocable burial fund.

Any other expenditure of principal not authorized in this final decree shall require [orphans'] court approval.

All financial institutions possessing assets belonging to [D.W.] shall provide immediate access to the guardian of the estate of [D.W.] or be subject to sanctions upon application of the [orphans'] court and a hearing.

The guardian of the estate has the authority to implement a freeze on any bank account, investment account, or any other form of investment, including any joint account where [D.W.] has an interest, and shall have the authority to freeze access to any joint safe deposit box.

Because Kevin Ryan, as principal, and Debbie Smith of Commonwealth Guardian Services, LLC, have now been appointed guardians of the estate of [D.W.], the [orphans'] court hereby exercises the authority granted it by law to rescind any and all existing financial durable powers of attorney that [D.W.] may have executed prior to today's date.

Therefore, any said powers are hereby deemed to be null and void.

The [orphans'] court also finds that there is no less restrictive alternative to the appointment of a guardian of the person and that appointment of a guardian of the person is medically necessary to protect and advocate for [D.W.'s] needs, his welfare, and his interests.

Kevin Ryan, as principal, and Debbi Smith of Commonwealth Guardian Services, LLC, are hereby appointed plenary permanent guardian of the person of [D.W.].

The guardian of the person is directed to file a report on [D.W.'s] social, medical, and other relevant conditions as required by law every year on or before the anniversary of today's date.

The guardian of the person has the authority and the responsibility to decide where [D.W.] shall live and how his meals, personal care, transportation, and recreation will be provided.

The guardian of the person also has the authority to authorize and consent to medical treatment and surgical procedures necessary for [D.W.'s] well-being.

> For the purposes of HIPAA,[2] the guardian of the person shall be considered a personal representative with the authority to review, receive, and discuss all protected health information related to [D.W.].

> In the event the guardian applies for medical assistance benefits, the guardian may be paid a $1,000 fee for application services and thereafter shall be paid a commission of $300 per month from income or the highest amount allowed by the Pennsylvania Department of Human Services.

> The guardian may petition the [orphans'] court for approval of payment of a reasonable guardian's commission from principal of [D.W.'s] estate based upon the hours worked and the services provided.

> Now, the guardian of the estate and the person are directed to prepare a budget to cover the cost of providing [D.W.'s] health, maintenance, and residence.

> The guardian does not have the authority to enter a safe deposit box in the name of [D.W.], that is, either individually or jointly, without [the orphans'] court's written authorization.

*Id.* at 33-38 (footnote added).

On this same date, November 28, 2022, the orphans' court filed a written order confirming its holdings, and on December 14, 2022, the orphans' court granted Attorney Pile permission to withdraw his representation and appointed Scott C. McIntosh, Esquire, to represent D.W. On December 28, 2022, Attorney McIntosh filed a timely notice of appeal on behalf of D.W. All Pa.R.A.P. 1925 requirements have been met.

On appeal, D.W. sets forth the following issue in the "Statement of Questions Presented" in his counseled brief (verbatim):

---

2 "HIPAA" refers to the federal Health Insurance Portability and Accountability Act, 45 C.F.R. § 160.101 *et. seq.*

- 11 -

    1. Whether the Orphans' Court erred and committed an abuse of discretion by finding that the petitioner presented clear and convincing evidence that Appellant is totally incapacitated, and that the appointment of a guardian of the person and estate is necessary, and that there were no less restrictive alternatives?

D.W.'s Brief at 3 (suggested answer omitted).

In the case *sub judice*, as D.W. indicates, he "is challenging the sufficiency of the evidence to sustain the [order] of incapacity." D.W.'s Brief at 10. Specifically, D.W. contends St. Luke's failed to prove, by clear and convincing evidence, that D.W. is "totally incapacitated and in need of plenary guardianship services." *Id.* In this vein, D.W. avers the evidence reveals, at most, that St. Luke's "wanted to transfer [D.W.] to a nursing home and he did not want that. Therefore, [St. Luke's] sought guardianship." *Id.* at 12. He also contends St. Luke's failed to demonstrate there are "no less restrictive alternatives" to plenary guardianship. *Id.* at 11.

D.W.'s claims challenge the orphans' court's finding of incapacity and subsequent appointment of a guardian, which we review for legal error or an abuse of discretion. *In re Duran*, 769 A.2d 497, 506 (Pa.Super. 2001). As we have explained, "[t]he appointment of a guardian lies within the discretion of the orphans' court." *Id.* This Court "is bound by the [orphans'] judge's findings of fact unless those findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court[,] whose duty it is to determine whether there was a proper application of law to fact

by the lower court." ***In re Peery***, 556 Pa. 125, 727 A.2d 539, 540 (1999) (internal citations omitted).

Under the Probate, Estates, and Fiduciary Code, a person may be adjudicated incapacitated, and a guardian of the person and the estate appointed, if the petitioner seeking the adjudication shows by clear and convincing evidence that the person's:

> ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S.A. § 5501. ***See*** 20 Pa.C.S.A. §§ 5511(a), 5512.1(b). The petitioner must present testimony:

> from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills.

***See*** 20 Pa.C.S.A. § 5518. In determining incapacity, the orphans' court is required to make findings of fact concerning:

> (1) The nature of any condition or disability which impairs the individual's capacity to make and communication decisions.
>
> (2) The extent of the individual's capacity to make and communicate decisions.
>
> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

20 Pa.C.S.A. § 5512.1. The law states a preference for limited guardianship. *See* 20 Pa.C.S.A. § 5512.1(6); *Gavin v. Loeffelbein*, 651 Pa. 465, 205 A.3d 1209, 1222 (2019) (when a person is only partially incapacitated, the court shall appoint a limited guardian). A court may appoint a plenary guardian of the person and/or the estate only upon a finding that the person is totally incapacitated and in need of plenary guardianship services. *See* 20 Pa.C.S.A. § 5512.1(c), (e). *Accord Interest of M.A.*, 284 A.3d 1202, 1213 (Pa.Super. 2022) (stating that the court's actions are to be guided by "a scrupulous adherence to the principles of protecting the incapacitated person by the least restrictive means possible") (citation and emphasis omitted)).

Here, we conclude the orphans' court's findings are based on competent evidence, and we find no error of law. *See In re Peery*, *supra*. Specifically, based on the evidence presented, the orphans' court found that D.W. "suffers from hallucinations, paranoid schizophrenia, diffuse cognitive dysfunction, psychotic disorder, [and] acute metabolic[.]" N.T., 11/28/22, at 33-34. Relying on the testimony of Dr. Ramirez, to which D.W. did not object, the orphans' court found these mental health issues "totally impair [D.W.'s] capacity to receive and evaluate information effectively and to communicate decisions concerning managing his financial affairs or to meet the essential

- 14 -

requirements for his physical health and safety." ***Id. See*** 20 Pa.C.S.A. § 5512.1(a)(1), (2).

Moreover, regarding the need for guardianship services, as testified to by the case manager, Mr. Ryan, there is no dispute that D.W. has no available family, friends, or other supports to assist him in making decisions. ***See*** 20 Pa.C.S.A. § 5512.1(a)(3). Further, there is no dispute that D.W. has no advanced directives or durable powers of attorney or trusts. ***See id.***

Additionally, the evidence reveals D.W. suffers from multiple, complicated health conditions, and D.W. does not have "the comprehension of complex material." N.T., 11/28/22, at 13. Based on this evidence, the orphans court properly found "there is no less restrictive alternative to the appointment of a guardian of the estate and that a guardian of the estate is medically necessary to protect and advocate for the needs, welfare, and interests of [D.W.]." ***Id.*** at 34. ***See*** 20 Pa.C.S.A. § 5512.1(a)(4). Also, given the severity of D.W.'s mental illness and health conditions, as well as his inability to handle finances or secure social services, the orphans' court properly held the guardianship would be plenary and permanent to ensure his physical health and safety. ***See*** 20 Pa.C.S.A. § 5512.1(a)(4), (5).

We conclude the orphans' court properly found that St. Luke's proved, by clear and convincing evidence, that D.W. is totally incapacitated and plenary permanent guardianship was the least restrictive means. ***See*** 20 Pa.C.S.A. § 5512.1(c), (e).

Contrary to D.W.'s assertion, this is not simply a case where a hospital wanted to transfer a patient to a nursing home, and since the patient did not want to go, the hospital sought to have the patient deemed incapacitated. Rather, based on the testimony of trained and experienced professionals, the orphans' court did not abuse its discretion in holding St. Luke's proved that D.W.'s "ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is…totally unable to manage his financial resources or to meet essential requirements for his physical health and safety."  20 Pa.C.S.A. § 5501.

Accordingly, we conclude D.W. is not entitled to relief, and we affirm.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2024